CHARLES L. HILLER AND ANOTHER v. GILBERT O. HAGE.[1]

February 20, 1931.

No. 28,267.

*Rasmus Hage,* for appellant.
*O'Brien & Sylvestre,* for respondents.

[1]Reported in 235 N. W. 11.

OLSEN, J.

Defendant appeals from an order denying his alternative motion for judgment notwithstanding the verdicts or for a new trial, and from the judgment entered on the verdicts in favor of the plaintiffs.

Plaintiffs and defendant agreed that they would together purchase 160 acres of land in the vicinity of one of the oil fields in Montana if the land could be bought for a satisfactory price. The final arrangement was that plaintiff Hiller was to pay one-half of the purchase price and own an undivided one-half of the land. Plaintiff Albertson and defendant were each to pay one-fourth of the purchase price and each own an undivided one-fourth of the land. Defendant told plaintiffs that he knew of a half section of land in Montana, subject to a past due mortgage of $850 held by the bank at Shelly, Minnesota, and informed plaintiffs that 160 acres of this land might be obtained at a reasonable price. The location of this land was looked up and found satisfactory. Defendant was the president of the Shelly bank and a large stockholder therein. Plaintiffs and defendant resided at Crookston, Minnesota, about 30 miles distant from Shelly. Defendant informed plaintiffs that he would go to Shelly and try to purchase the land for the three of them. It was agreed that he should go and purchase the land for the best price he could obtain, but not to exceed $25 an acre or $4,000. Defendant then went to Shelly and purchased the land. He reported to plaintiffs that he had a hard time to get the land and had to pay the full sum of $4,000 for it. Plaintiffs paid to defendant their share of the purchase price on that basis.

They bring this suit, alleging that defendant paid only $1,000 for the land and fraudulently represented and induced them to believe that he had paid $4,000 therefor. They seek to recover the excess paid by them over and above their share of the actual purchase price paid by defendant. The jury returned a separate verdict in favor of each plaintiff.

The land in question was owned by one W. C. Brurud. He and his wife deeded the land directly to this defendant. It stands ad-

mitted that Brurud received only $1,000, or a few dollars less, for the land, and this was paid by giving him a satisfaction of the $850 mortgage held by the Shelly bank on the half section and paying the interest thereon and taxes on the land. This left Brurud with unencumbered title to one-quarter section.

The defense presented is in substance that one Fauglid, the cashier of the Shelly bank, had the negotiations with Brurud and orally purchased the land from him for $1,000; that defendant then purchased from Fauglid and had to pay him $4,000, giving Fauglid a profit of $3,000.

■ The decisive question here is whether the verdicts of the jury, finding that defendant, not Fauglid, purchased the land from Brurud for $1,000, are sustained by the evidence. Without going into any detailed statement of the evidence, we find that the verdicts are amply sustained. One Efteland, then assistant cashier in the Shelly bank, testified directly to the negotiations and conversation between defendant and Brurud and to the purchase of the land by defendant directly from Brurud. His testimony finds fair support in the testimony of Mrs. Brurud, in the testimony of plaintiff Albertson as to statements made to him by defendant that defendant had a hard time to induce Mrs. Brurud to agree to the price and that after the death of Mr. Brurud defendant informed him that the man they had bought the land from had died and that he was glad the widow had one-quarter section free of debt and also a nice chunk of money.

It appears that defendant did deposit in the Shelly bank, soon after the purchase, $4,000, which included the $3,000 paid by plaintiffs. It is claimed that this money, over and above the $1,000 used to satisfy the Brurud mortgage, interest and taxes, was received and used by Mr. Fauglid personally. Inferentially at least, it may well be found that a large part of the money was used for the benefit of the Shelly bank. Brurud did not receive any part of it. What defendant did with the money after he received it from plaintiffs is not decisive.

■ Error is assigned on the reception of some evidence as to the number of shares of stock in the Shelly bank owned or controlled

by defendant. His stock ownership was a circumstance which might well be shown. Two questions were asked defendant on cross-examination as to statements made by him to Brurud. The questions were objectionable as calling for conversation with a person since deceased, but defendant denied making the statements and the matter was not further gone into. A statement in the charge, that "the question is, how much did he [defendant] necessarily pay as the purchase price of the land under the bargain that was made for it," is urged as error. No exceptions were taken to the charge at the time. If the sentence now singled out was not entirely consistent with other parts of the charge, it was an inadvertent statement and should have been called to the attention of the court at the time. We find no reversible error.

Order and judgment affirmed.

LORING, J. took no part.